UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-4424(DSD/SRN)


Birchell Gray,

        Plaintiff,

v.                                                    **ORDER**

Four Oak Court Association,
Inc., Richard Kampa and
Peterson, Engberg & Peterson,

        Defendants.


      Richard M. Carlson, Esq. and Morris Law Group, P.A., 8300
      Norman Center Drive, Suite 710, Bloomington, MN 55437,
      counsel for plaintiff.

      John G. Engberg, Esq., Mark W. Bay, Esq., Richard D.
      Kampa, Jr., Esq. and Peterson, Engberg & Peterson, 400
      Second Avenue South, Suite 700, Minneapolis, MN 55401,
      counsel for defendants.


      This matter is before the court upon defendants' motion for
summary judgment. Based upon a review of the file, record and
proceedings herein, and for the reasons stated, the court grants
defendants' motion.


**BACKGROUND**

      This dispute arises out of defendant Four Oaks Court
Association, Inc.'s ("FOCA") foreclosure on plaintiff Birchell
Gray's ("Gray") townhome located at 3134 Farnum Drive, Eagan,

Minnesota - legally described as Lot 3, Block 2, Coachman Land Company 3rd Addition, Dakota County, Minnesota ("the townhome"). The townhome is part of a common interest community managed by FOCA and governed by a recorded Restated Declaration of Covenants, Conditions and Restrictions ("Declaration").

In May 2006, FOCA homeowners approved a $2,000 per unit special assessment to pay for new roofs and attic insulation. On August 30, 2006, Gray paid half of the special assessment to FOCA's accounting firm Beck Accounting Services ("Beck Accounting"). In September 2006, FOCA fined Gray $500 for not draining the townhome's exterior water pipe. Gray did not pay this fine and disputes its validity.

On January 6, 2007, Beck Accounting contacted defendant Rick Kampa ("Kampa"), an attorney with defendant law firm Peterson, Engberg & Peterson (PE&P), to collect $1,774 from Gray.[1] This amount reflected the unpaid special assessment, the $500 fine, the January 2007 monthly assessment, a $25 penalty and other miscellaneous charges. On January 9, 2007, Kampa sent to Gray by certified and regular mail a letter informing him that he owed FOCA

---

[1] The record contains a December 12, 2006, document addressed to Gray from FOCA titled "Final Notice Before Legal Action," which demanded $1,963 and indicated that failure to remit payment within ten days would result in immediate legal action. (Def. Ex. 3.) Gray maintains that FOCA did not provide him with this document.

$1,834.[2]   The letter further indicated that FOCA had "accelerated all monthly dues payable this fiscal year (pursuant to Section 14 of the Declaration and Section 8.3 of the Bylaws)," but that FOCA would waive the acceleration upon receipt of full payment by February 7, 2007.   (Def. Exs. 4, 14.)   The letter noted in conclusion that PE&P was acting as a debt collector and that pursuant to the Fair Debt Collection Practices Act ("FDCPA") the law firm would assume the validity of the debt unless Gray disputed it in writing within thirty days of receiving the letter.   Gray alleges that he did not receive this letter.[3]

On February 22, 2007, Kampa sent Gray by certified and regular mail a copy of the "Townhome Association Assessment Lien Statement" ("Statement"), which was recorded in the Dakota County Recorder's Office on February 21, 2007.   The Statement declared that FOCA intended to claim and hold a lien on the property for $4,493 as a result of "unpaid assessments, interest, late fees and attorneys fees."[4]   (Def. Ex. 6.)   Gray claims that he did not receive a copy of the Statement.

---

[2] This amount reflected the $1,774 plus attorney's fees and costs as of January 9.

[3] The letter sent by certified mail was returned to Kampa as "unclaimed." (Def. Ex. 15.)   The letter sent by regular mail was not returned to Kampa.

[4] The $4,493 reflects the outstanding $1,834, $2,079 in accelerated monthly assessments from February through December 2007, and $580 in legal fees.

On March 6, 2007, Kampa sent Gray another letter by certified and regular mail that contained a copy of the "Notice of Assessment Lien Foreclosure Sale" ("Foreclosure Notice").   The Foreclosure Notice indicated that FOCA had a lien on the townhome for $4,493 that would be foreclosed through a sheriff's sale of the townhome on April 17, 2007.   Gray claims that he did not receive this letter.[5]

In addition to sending the March 6 letter, Kampa requested personal service of the Foreclosure Notice by the Dakota County Sheriff's Office.   The Sheriff's Office, however, returned a certificate of non-service on March 22, 2007. (Def. Ex. 10.)  Gray was finally personally served with the Foreclosure Notice on April 3, 2007, and the sheriff's sale was rescheduled for May 2, 2007.

After being served, Gray called Kampa who indicated that Gray owed $1,000 for the special assessment and $500 for the fine.  Gray agreed to pay the remainder of the special assessment but refused to pay the fine.   On April 29, 2007, Gray sent a check in the amount of $1,085 to Beck Accounting for the special assessment and associated late fees.

---

[5] Either the February 22 or March 6 certified letter was returned to Kampa as "unclaimed." (Def. Ex. 15.)  The letters sent by regular mail were not returned to Kampa.

4

On May 2, 2007, FOCA purchased the townhome at the sheriff's sale for $7,988.62.[6] (Def. Ex. 13.) On May 16, 2007, in response to an inquiry from Gray, Kampa mailed Gray a partial copy of the "Sheriff's Certificate of Sale," which provided that Gray had six months from the date of the sale to redeem the property. Kampa also enclosed a letter indicating that he would not accept partial payment. (Def. Ex. 12.)

In June 2007, Gray received a letter from Beck Accounting indicating that he had paid the $2,000 special assessment in full but that he still owed $29.15 in interest. Gray remitted the final $29.15 to Beck Accounting on July 29, 2007.[7]

On September 17, 2007, Kampa informed Gray by letter that the period for redeeming the townhome would expire on October 2, 2007, and that, absent redemption, Gray would be required to vacate the premises on October 18, 2007. (Gray Aff. Ex. K.) Kampa sent a revised letter on October 15, 2007, indicating that the redemption period expired on November 2, 2007, and that Gray would have to vacate the premises on November 15, 2007, if he did not redeem the townhome. This letter also noted that the redemption amount was $8,963.15.

---

[6] This amount reflects the $4,493 lien plus costs and disbursements, including attorneys fees and costs, totaling $3,495.62. (See Carlson Aff. Ex. B.)

[7] Gray also alleges that he paid the monthly general assessments to Beck Accounting from February through September 2007.

Gray brought this action on October 30, 2007, asserting claims under the FDCPA and Minnesota state law.  On November 1, 2007, the court granted Gray's motion for a temporary restraining order, and on November 30, 2007, the court issued a preliminary injunction staying the redemption period until further order of the court. Defendants now move for summary judgment.

**DISCUSSION**

**I.   Standard of Review**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth

specific facts sufficient to raise a genuine issue for trial.  <u>See</u>
<u>Celotex</u>, 477 U.S. at 324.  Moreover, if a plaintiff cannot support
each essential element of his claim, summary judgment must be
granted because a complete failure of proof regarding an essential
element necessarily renders all other facts immaterial.  <u>Id.</u> at
322-23.

## II.  Fair Debt Collection Practices Act

Gray argues that Kampa and PE&P violated the FDCPA by
(1) failing to provide the correct amount due and owing during the
lien foreclosure proceedings, (2) indicating that the redemption
date for the townhome was October 2, 2007, rather than November 2,
2007, and (3) attempting to collect attorneys fees related to the
foreclosure that are allegedly prohibited by Minnesota law.  <u>See</u> 15
U.S.C. § 1692e (prohibiting "false, deceptive, or misleading
representation[s] or means in connection with the collection of any
debt").  Gray further asserts that Kampa and PE&P violated the
FDCPA's notice requirement because he did not receive the January
7 letter.  <u>See</u> <u>id.</u> § 1692g.  Defendants contend that the FDCPA does
not apply to the foreclosure activities underlying Gray's § 1692e
claims and that Kampa and PE&P complied with § 1692g.

### A.   Applicability

Congress enacted the FDCPA "to eliminate abusive debt
collection practices by debt collectors, to insure that those debt
collectors who refrain from using abusive debt collection practices

are not competitively disadvantaged, and to promote consistent
State action to protect consumers against debt collection abuses."
Id. § 1692(e).  In furtherance of this purpose, the FDCPA requires
and prohibits certain activities by debt collectors that are done
"in connection with the collection of any debt."  See id. §§ 1692c
(prohibiting certain communications), 1692d (prohibiting harassment
or abuse), 1692e (prohibiting false or misleading representations),
1692f (prohibiting unfair practices), 1692g (requiring validation
of debts).

In this case, the parties agree that the roofing assessment
and fine constitute a debt,[8] and defendants do not argue that PE&P
is not a debt collector.[9]  Cf. Piper v. Portnoff Law Assocs., Ltd.,

───────────────────

[8] The FDCPA defines the term "debt" as "any obligation or
alleged obligation of a consumer to pay money arising out of a
transaction in which the money, property, insurance, or services
which are the subject of the transaction are primarily for
personal, family, or household purposes, whether or not such
obligation has been reduced to judgment."  Id. § 1692a(5).

[9] Subject to certain enumerated exceptions, the FDCPA defines
the term "debt collector" as:

    any person who uses any instrumentality of interstate
    commerce or the mails in any business the principal
    purpose of which is the collection of any debts, or who
    regularly collects or attempts to collect, directly or
    indirectly, debts owed or due or asserted to be owed or
    due another. . . . For purposes of [§ 1692f(6)], such
    term also includes any person who uses any
    instrumentality of interstate commerce or the mails in
    any business the principal purpose of which is the
    enforcement of security interests.

Id. § 1692a(6).

396 F.3d 227, 236 (3d Cir. 2005) (determinative factor of FDCPA application "is whether the obligation of the [plaintiffs] fits the statutory definition of a 'debt' and whether [the defendant's] activities fit the statutory definition of a 'debt collector.'"). Rather, the issue before the court is whether the communications made by Kampa and PE&P related to lien enforcement were "in connection with the collection of any debt." See Kaltenbach v. Richards, 464 F.3d 524, 529 n.5 (5th Cir. 2006) (noting but not reaching issue).

The Eighth Circuit has not addressed whether foreclosure activities constitute debt collection under the FDCPA, Cohen v. Beachside Two-I Homeowners' Association, Civ. No. 05-706, 2007 U.S. Dist. LEXIS 44978, at *28-29 (D. Minn. June 29, 2006), and the courts that have considered the issue conflict, compare Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376 (4th Cir. 2006) (foreclosure activities constitute debt collection activities), and Piper, 396 F.3d at 233-36 (lien enforcement activities constitute debt collection activities), with Rosado v. Taylor, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004) (security enforcement activities not debt collection activities), and Hulse v. Ocwen Federal Bank, FSB, 195 F. Supp. 2d 1188, 1204 (D. Ore. 2002) (foreclosure activities not debt collection activities). The court determines that the lien foreclosure activities in this case do not constitute debt collection under the FDCPA.

In interpreting a statute, a court begins and ends its inquiry with the statute's text if Congress's intent "can be clearly discerned from the statute's language." United States v. Alaniz, 235 F.3d 386, 386-87 (8th Cir. 2000) (citations and quotation omitted).   A court's interpretation is guided by the "plain language rule," which requires "examining the text of the statute as a whole by considering its context, object, and policy." Am. Growers Ins. Co. v. Fed. Crop Ins. Corp., 532 F.3d 797, 803 (8th Cir. 2008) (citations and quotations omitted).

The FDCPA does not define "the collection of any debt." However, the statute's definition of a "debt collector" clearly reflects Congress's intent to distinguish between "the collection of any debts" and "the enforcement of security interests."   15 U.S.C. § 1692a(6).  The first sentence of that definition defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Id. § 1692a(6).  The third sentence of § 1692a(6) provides that for purposes of § 1692f(6),[10] a debt collector is also "any person who uses any

---

[10] Section 1692f(6) prohibits:

[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if –
(continued...)

10

instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  If a party satisfies the first sentence, it is a debt collector for purposes of the entire FDCPA.  See Kaltenbach, 464 F.3d at 529.  If a party satisfies only the third sentence, its debt collector status is limited to § 1692f(6).  However, if the enforcement of a security interest was synonymous with debt collection, the third sentence would be surplusage because any business with a principal purpose of enforcing security interests would also have the principal purpose of collecting debts. Therefore, to avoid this result, the court determines that the enforcement of a security interest, including a lien foreclosure, does not constitute the "collection of any debt."  See Jasa v. Millard Pub. Sch. Dist. No. 17, 206 F.3d 813, 815 (8th cir. 2000) (noting "principle of statutory construction that avoids creating mere surplusage").  Accordingly, the court grants summary judgment on Gray's FDCPA claims to the extent that they are based on conduct related to enforcing the lien.  Cf. Owens v. Hellmuth & Johnson,

---

[10](...continued)
(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

11

PLLC, 550 F. Supp. 2d 1060, 1066 (D. Minn. 2008) (attempt to collect debt creating lien rather than enforce lien is debt collection not enforcement of security interest).

**B.   Notice of Debt**

Section 1692g(a) requires a debt collector that is communicating with a consumer in connection with the collection of any debt to "send the consumer a written notice containing" certain enumerated information.  This section "requires only that a [n]otice be 'sent' by a debt collector.  A debt collector need not establish actual receipt by the debtor." Mahon v. Credit Bureau of Placer County, 171 F.3d 1197, 1201 (9th Cir. 1999).  Kampa's January 7 letter to Gray contained the statutorily required information, and the record establishes that Kampa sent the letter to Gray by regular and certified mail.  Therefore, Kampa and PE&P did not violate § 1692g, and the court grants summary judgment on this claim.

**III.  State Law Claims**

Gray asserts various state law claims.  A court may exercise supplemental jurisdiction over state law claims that are part of the same case or controversy as the claims that fall within the court's original jurisdiction.  28 U.S.C. § 1367(a).  A court may in its discretion, however, decline to exercise supplemental jurisdiction when "all claims over which it has original jurisdiction" have been dismissed. Id. § 1367(c)(3); Gibson v.

<u>Weber</u>, 433 F.3d 642, 647 (8th Cir. 2006).   That being the case here, the court declines to exercise its supplemental jurisdiction over Gray's remaining state-law claims and dismisses them without prejudice.

## CONCLUSION

Accordingly, based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that:

1.   Defendants' motion for summary judgment [Doc. No. 32] is granted.

2.   Plaintiff's FDCPA claims are dismissed with prejudice.

3.   Plaintiff's state law claims are dismissed without prejudice.

4.   The court's November 30, 2007, preliminary injunction staying the redemption period [Doc. No. 23] is lifted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 22, 2008

<u>s/David S. Doty</u>
David S. Doty, Judge
United States District Court

13